Attorney General of the United States, Mr. Morrow. Good morning, Your Honors, and may it please the Court, I'd like to, I'm Chris Morrow on behalf of Petitioner Ramon Andrew Williams in this Consolidated Appeal, so I'd like to please reserve three minutes for rebuttal if I may. As granted. Thank you. Your Honors, Mr. Williams is a 48-year-old lawful permanent resident of the United States. He was brought here when he was only a 13-month-old baby and has lived here ever since. He has deep family ties to the United States. Both of his parents, all of his siblings, and all of his children are all citizens of the United States. Be assured that we were on top of the facts and that we read the briefs, so you may want to dive right into the legal issues that pertain. Sure. So, responding, the government here contends that Mr. Williams is deportable under 8 U.S.C. 1101-A43-R. Should we start with the standard of review? Do you disagree that the so-called loose categorical approach applies here? I think the approach that applies in terms of construing the relating to clause of the relevant section of the INA, the analytical framework was set forth by this Court most recently this year in Flores, and so I think... And that's what we said there. Correct. Well, I think not exactly. I think the looser language... What's not exactly? So, it is, as I think Judge Hardeman's question's predicate here suggests, a pretty fundamental aspect of this case because the modifier to the categorical approach suggests a difference from other cases where we simply apply a categorical approach. So, the looseness, if you will, has what effect in terms of your appeal? So, when I said not exactly, it was my belief that the looser exact term might have come from a previous case before Flores, and that in Flores the exact test that this Court set forth was that what related to means, what Congress meant there is that there needs to be a logical or causal connection between the two statutes that we're analyzing, and I think this panel, for purposes of this case, need not concern itself with the causal prong of that analysis, as I think the government conceded by omission, and it's proved that it is not contesting there's an actual causal relationship between these two relevant... between the two statutes here. And so, their argument proceeds under the logical prong, and what this Court said in Flores, exactly what that means, that it's not some, you know, by the gut, what do you think in common parlance, you know, a logical connection is. It's a discrete legal test, and what this Court in Flores said is that what logical means is that there must be... the statutes must target the same core criminal conduct, such as the statutes are directly analogous. Doesn't the looser categorical approach make your climb steeper here in terms of the falsity encompassed by the false agency endorsements and the falsity that is more typically thought of as involved in common law forgery? So, respectfully, we don't think so, Your Honor, because we think if that logical test means anything, that the focus is on the core criminal conduct, then here, when you're dealing with a false agency endorsement versus what's well accepted as common law classic forgery, the core criminal conduct involved in forgery is the false making of a document, as the Supreme Court set forth in Gilbert, and I think as the government agrees. And so in the case of a false agency endorsement, you don't have that same... as the Tenth Circuit set forth in the Hunt opinion, it said the core conduct there, the issue is that it's a breach of trust. It's not the false making of a document. And so the core criminal conduct test that this Court set forth in Flores for analyzing the logical problem, clearly here, if it means anything, the core conduct of a common law forgery is the false making of a document. And in a false agency endorsement, as courts have said across the country for decades, it's a breach of trust in the case of a false agency endorsement. And so, and we think that, you know, we've responded, the government points out this Court's opinion in Drake's, and we think the Drake's opinion, while it preceded this in Flores, and it makes all the sense in the world, because this Court in Drake's was faced with a Delaware forgery statute, and the petitioner there said, well, the Delaware statute, all that's required, there's a... you don't necessarily have to intend to defraud someone. Just the mere intent to deceive someone is sufficient in Delaware to commit forgery, and that therefore, and therefore the Delaware statute is broader than common law forgery. Let me take you down a different path, or another path, if you will, because you've made several arguments in your brief that I'm not sure I entirely understand, so hopefully you can clarify them for me. First of all, you argue that the Georgia statute is broader than the generic federal definition of forgery, right? Correct. And, excuse me, I believe you suggest that because it does not require that the forged document, let me use your words, be capable of effecting a fraud or of causing prejudice to another's rights. Correct. That's the argument. Explain what you mean by that, please. I mean, because that appears to me to actually go to the effect of the forged document, or the effect that the forged document has upon the recipient. Right, so the argument is simply that as this court set forth with a common law standard for an element of forgery in McGovern, namely under this court's opinion, there was a requirement that the instrument in question be capable of actually effecting... Yeah, but are you arguing that the document actually has to defraud someone in order for somebody to be guilty of common law fraud? I mean, so... Common law forgery. If you have a really sophisticated victim, the forger skates? I mean, is that what you suggest? No. Under that argument, our argument is simply that there needs to be the instrument, because the core of the crime is rooted in commercial law, that the instrument in question needs to be capable of effectuating some sort of fraud that, you know, any type of misrepresentation would not constitute forgery. But it's our position that this court need not reach that question. The government doesn't really address the merits of that argument. They say, well, Petitioner has not exhausted that argument because it wasn't properly raised before the board. We think that is clearly wrong. We think that that argument was clearly raised by the board... Sorry, by Petitioner before the board, and we set forth in a reply brief, you know, the exact places where Petitioner raised that argument. But again, we don't think this court needs to reach whether or not that argument was exhausted or the substance of that argument, because our primary argument, which we think is clear, is that the Georgia forgery statute is broader simply because by its plain text and by the fact that Georgia has actually prosecuted and convicted people of forgery for false agency endorsements, that it's plainly broader and that it encompasses that conduct where courts across the country have been nearly unanimous in the fact that false agency endorsements are not common law forgery. And so the question here that... Well, let me ask you this, to the chief judge's question. You argue that the Georgia statute does not require that the forged writing be capable of effecting a fraud. But the statute requires, quote, an intent to defraud, end quote. And if the statute punished a writing that on its face was incapable of effecting a fraud but was created with the intent to defraud, wouldn't that, under the rationale of this crime, quote, relating to, end quote, forgery, i.e., it would be punishing attempted forgery and therefore, quote, targeting the same core criminal conduct, end quote. So I think, candidly, Your Honor, we would concede that that is a much closer question than the question of whether or not a false agency endorsement is related to forgery, a much closer question. And I think, respectfully, the test is the same, which is this court is tasked with elucidating what Congress meant when it said forgery in that section of the INA. And so, as the Supreme Court said in Gilbert, when Congress uses a term that's rich in the common law like forgery and doesn't define it, it's... Isn't that the easy part of the case? I mean, forgery means forgery. I thought the hard part of the case was what is related to me. And, you know, it's a pretty fuzzy phrase, and I think reasonable minds could differ on what's related and what isn't, right? So, agreed that it's a pretty fuzzy phrase in the abstract, but that's why I think this court in Flores is so helpful and instructive because, again, this court is not faced with, you know, trying to figure out what related to means. This court in Flores already set forth exactly what related to means. And for purposes of this case, the question therefore before the court is, is there a logical connection between common law forgery and a false agency endorsement? And that question is determined by is do the statutes cover the same core criminal conduct? And so we think the answer is clearly no. And as this court... Can you define for us what the core criminal conduct is? So for... So I think as the 10th Circuit said in U.S. v. Hunt, the core criminal conduct of a false agency endorsement is a breach of trust. That's what's happening. Whereas the Supreme Court said in Gilbert versus... The Supreme Court said in Gilbert and many other courts have said in the case of a forgery, the core criminal conduct is the false making of a document. You're actually creating a document that is not genuine. And so I think a way to think about it is if there's somebody who, you know, two people, one person works at a company and has an authorized signatory on the company's checking account and there's another person who... And why isn't this document false in some ways? Is it just because the signature was authentic? Is that the crux of your argument? Correct. If the signature is authentic, you can never have relating to forgery. Is that your argument? If the signature is authentically the signature of the person it's purporting to be and the document is exactly what it's purporting to be, then as courts have construed, courts have called that a genuine document. And the Supreme Court has said a genuine document is necessarily... It cannot be forgery because forgery, the core criminal conduct is that, the false making of a document. And so I think that this court need only follow its own precedent here because in Bob, the Attorney General, a case issued after Drake's, this court discussed what happened in Drake's and said, you know... So I think... And looked to 18 U.S.C. 510B, which is a statute, a federal statute, that criminalizes the exchange of forged insurance. And the court said, well, clearly there's no intent to defraud someone there, but it's clearly relating to forgery because you're exchanging forged instruments. And so while the common law definition of forgery does require fraud, this statute that Congress called forgery is still forgery. You're exchanging forged documents, and so that's relating to forgery. And the court in Bob, I think, very importantly for this case, pointed to several other federal statutes criminalizing forgery that did not include an intent to defraud. And so the court said in Bob, and I quote, we agree with the government that Congress's choice of the word related to was intended to capture certain criminal conduct, such as that defined by 18 U.S.C. 510B, which does not contain any intent to deceive or defraud. So this court has already said exactly what Congress meant when it said related to forgery in that section of the INA. It was to encompass and bring in conduct that Congress considered forgery, so the false making of a document without necessarily an intention to fraud. But, you know, so because Congress, it calls that conduct forgery in other sections of the U.S. Code. And so... All right. Thank you, Mr. Morrow. We'll have you back on the rebuttal. Thank you. Thank you very much. Ms. Greer. May it please the court. I'm Christina Greer on behalf of the United States Attorney General. The court should hold the petitioner's conviction for first degree forgery under Georgia law is an aggravated felony because it relates to forgery for two reasons. First, following Drakes v. Zimsky, the court should look to the more modern contemporary definition of forgery as defined in the model penal code and the codes of several states at the time of the passing of the 1996 Act, which all include false agency endorsements and not the strict common law definition petitioner suggests. Second, as discussed in Flores, when the issue is whether a conviction is for an offense relating to a federal offense, a looser categorical approach applies. Isn't there some tension between the position that you espoused and which you've just re-articulated, that is that the broad modern conception of forgery includes false agency endorsements? Isn't there tension between that and the Supreme Court case of Gilbert v. United States? There isn't. The decision in Gilbert actually demonstrates that there... What did the court say in Gilbert? Gilbert said that... It's not a new case, 1962, but what did Gilbert say? Yes. So the court said that forgery under a specific federal statute did not include false agency endorsements. What's important... But how does that square with the position you're taking now? There the court was interpreting the federal statute and what a certain federal criminal statute would include. But the decision is not as clear as to exactly whether traditional common law forgery was clear or not. The Gilbert decision was 4-3 with the dissenters also... Well, 4 always beats 3 and hence it's the law. It does. So rather than keeping a scorecard, let's deal with what the majority said. Yes. Well, in its decision, the majority goes through all of the different arguments for what did and did not constitute common law forgery, demonstrating that it wasn't clear what common law forgery was. The fact that there was a Supreme Court case interpreting it... Has Gilbert been overruled or has Gilbert been superseded? It seems to me that it's something of an obstacle at least to you here. It has not been superseded. However, Gilbert was not interpreting the INA and forgery was added to the INA in 1996 and at that point Congress decided not to include a cross-reference to the federal forgery definition. But you can see without the language related to, you have no argument, right? Because if the statute didn't say related to, we would just look at the elements of forgery and here it doesn't map perfectly onto the Georgia statute. I would argue that actually Drakes v. Zemski entirely... In Drakes the court seemed to only be determining how it should interpret the word forgery. I don't understand. It seems to me that Judge Hardeman's question is not only right on but it kind of implicitly suggests to you the stronger path you ought to be pursuing. I'm not quite sure why you didn't take up that question in that fashion. Isn't that your stronger argument? Isn't that your path here? It is. I believe we have two paths and one is that forgery should be given a... Well, according to Robert Frost there was a road not taken so perhaps it would be better to take the one that one of the members of the court has suggested. Very true. We do argue that under Flores and relating to... Flores' interpretation of relating to is including a logical connection to forgery that the Georgia statute is a forgery offense. Before you get into that logical connection, do you concede the point made by your adversary that we're not dealing with the causation part of this? Yes, we concede that. All right, then why don't you explain to us why there is a logical connection between the Georgia statute and forgery. There is a logical connection because the force behind forgery is that a document cannot be trusted or relied upon and that is exactly what, even if false agency endorsements are included under the Georgia law, that's what would be the situation there. You cannot trust the document. You cannot rely upon the document. Forgery is all about fraud, altering or making documents with an intent to defraud. Well, they say forgery is all about someone signing the wrong name, right? Yes. Why are they wrong about that? They're wrong about... When we think forgery, don't we sort of in a commonsensical fashion think about somebody signing a name that is not their own? It is, but just as Petitioner stated, this is not about a common law or a common sense conception of forgery. It's what is legal forgery and what is the purpose of forgery and the core criminal conduct. For forgery, the core criminal conduct is intent to defraud, making a document with intent to defraud, and that is what we have in the Georgia statute. So document and intent are the primary points, if you will, in the common law conception of forgery as opposed to the use of a false name or someone else's name. Is that the thrust of your argument? Yes, because use of a false name, it depends. If it's tied to a document, then that would be forgery, but just using a false name wouldn't necessarily be forgery. There's a document that must be part of it, and even in the Model Penal Code, the commentary discusses that exact issue. It's all about integrity of documents and whether we can trust documents. I'm wondering if there's a middle ground between your two positions. As I understand your argument, you're focused on the dishonesty of the document. Yes. There's something fraudulent, dishonest, wrong about the document. Yes. And the other side is saying the crux of the matter is just signing the wrong name. Is there some middle ground between those two poles that will help us decide whether this crime is related to forgery, or is it a binary choice for us? I think ultimately it ends up being a binary choice, because the question is whether the Georgia statute qualifies or not as forgery, and whether false agency endorsements qualify or not. Our suggestion, though, is that looking at Drake's and looking to a more modern conception of forgery, as the court did here in Drake's, would dispense with the issue of false agency endorsements and whether there's a logical relation to forgery, or to the traditional common law forgery definition. Because in Drake's, what the court said is where the common law definition is not clear, or the modern conception of forgery is different than the common law conception. We should look to more modern, contemporary definitions of the statute, or of forgery. And that can be seen in the model penal code, as well as the codes of two states within the Third Circuit when the 1996 Act was passed and forgery was added to the aggravated felony definition. Ms. Greer, let's return to the Georgia statute that we have before us in this case. I understand your position to be that, despite its language, the Georgia statute isn't actually used to prosecute false agency endorsements. Is that right? Basically, yes. We argue that petitioners are not sure. Basically, the Ward v. State case, which is cited in the blue brief, which you don't cite, we've, I'm sure, all looked at. What did that case involve? That case, according to the appellate court decision, it did not state what the actual act was. It's only in the supplemental appendix where petitioners added, during the reply briefing, added an indictment and a sentencing order that we see that it appears that the actual action or conduct that was charged was a woman signing her own name. Business checks. Yes, business checks. So isn't that an example that counters the position that I understood that you basically took? Is that the exception that makes it basically? No. We don't necessarily accept that that is a conviction. The state, the appellate court decision did not deal with Marjorie Warren signing her own name. It said that she didn't challenge that portion of it, so we don't actually know if that is a proper statement of state law, what is in the indictment. And indictments are not always the most reliable, especially at the, they're not always the most reliable for demonstrating what state law is. I think Georgia uses the term of our accusation, is that right? Isn't that what they use in lieu of indictment or information? It was entitled indictment, I believe, the document in the supplemental appendix, the first document. And then the second document doesn't actually state whether it was that indictment that she was convicted under and partially pled to. So we don't actually know if those two are connected. And either way, those are not publicly available documents, and we did not have those at the time of our briefing. So we would argue that that one case would not be sufficient. And additionally, Tifton is a civil case where someone was trying to recover for damages relating to somebody endorsing and cashing a check when they shouldn't have, but no one was actually prosecuted in Tifton. So we don't know if that's how the Georgia forgery statute would actually be applied in a criminal case. Ms. Greer, if I may, let me come at this from maybe a somewhat different angle. As I read the statute, it seems that there were not three, but rather five ways to commit the crime of offensive forgery in the first degree in the state of Georgia. First, a writing can be made in a fictitious name. Second, a writing can be made in such a manner that it purports to have been made by another person. Third, a writing can be made in such a manner that it purports to have been made at another time. Fourth, a writing can be made in such a manner as it purports to have been made with different provisions. And fifth, a writing can be made in such a manner that it purports to have been made by authority of one who did not give such authority and utters or delivers such writing. I understand that your Georgia case law disagrees and states that there are in fact three ways to commit the crime. One, in a fictitious name. Two, in a manner that it purports to have been made by another person at another time with different provisions. Or three, by authority of one who did not give such authority. But if this is true, wasn't Mr. Williams improperly charged since he was charged only with making a writing that purports to have been made by another person? And if so, will that affect this court's analysis and the outcome of this case? It would not. The government does concede that this statute is not divisible. And that's what your question is going to, is the divisibility of the statute. And we concede that it's not. After reading petitioner's opening brief and seeing the statutes they cite about charging practices in Georgia, our office did decide that this statute is not divisible. And so whether he was properly charged or not would not come into the analysis here. If there are no further questions, we respectfully request that the court deny this petition for review. Thank you. Thank you, Ms. Greer. Mr. Morrow, we'll have you back under a bundle. Thank you, Your Honor. I'd like to first just briefly address the point that Your Honor has raised with the respondent about the Warren case. And so the appellate decision in Warren, we thought it was clear from the face of the appellate decision that this was a classic false agency endorsement. This involved someone who was an employee at a medical practice, was an authorized signatory on the company's account, was authorized to buy supplies for the medical practice, and yet used that certainty to sign some checks to buy things for her personal use, which she was not authorized to do. All right. So if we agree with your characterization of the theory of the case and the evidence in the case, then the point is that that refutes at least in part the suggestion of the government that Georgia doesn't prosecute these cases. Exactly. The question is, is there a realistic possibility that this conduct would be prosecuted? And so the indictment is critical here because the question is not what the appellate court considered in its appellate decision, it's does Georgia prosecute people for classic false agency endorsements? And the Warren case, first of all, the indictment is publicly available. We thought it was clear from the face of the appellate decision that it was a classic false agency endorsement. We just took it upon ourselves to get the indictment because the indictment, just to confirm, it leaves no room for the argument that this is not a false agency endorsement classically. And so it's really not a serious argument in our estimation that Georgia doesn't prosecute false agency endorsements. It's clear from the face of the statute that it criminalizes them, and here's a case where they actually prosecuted a false agency endorsement. Could you address my question about whether there's a middle ground between – I can restate it if you need me to. Sure. About whether we have a binary choice here or whether there's some middle ground between the polls. In terms of the definition of common law forgery? In terms of the party's respective understandings of what related to forgery means, I understand your position would be a necessary condition for the government to prevail here is that somebody signs somebody else's name. And without that, you can't have it. And their position is obviously a lot more literal that if the document is a bad document, it's got something fraudulent, it's intended to deceive, et cetera, irrespective of whether someone signs his or her own name, that suffices. So I would just say briefly at the outset, Your Honor, is that our position and I think the clear position of courts across the country is that it doesn't necessarily have to be in the signature, right? If somebody knew – if somebody at a company knew what their company checks looked like and made an effort to, you know, took out a ruler and exact a knife and mimicked the company's signature in an effort to create a false check, that would still be a forgery. It's the false making of a document. That can take the form of a signature. All right. So it all comes down to whether the document is true or not. Genuine. Right. And why is this document – these documents at issue, why were they true documents? I mean, there was some untruth in the documents, right? In the case of false agency endorsements generally, why are they – Yes. Right. So what the courts have said is that the untruth is in the representation that there is authority to use the instrument for what the person has attempted to use it for. The falsity is not in the document itself. In Warren, if right before the defendant had attempted to use the checks, she had called the director of the medical practice and said, hey, I'd like to use this, you know, somebody to pay my landlord, can I? And the director says, okay. It doesn't change the nature of what that actual check is. It's still the exact same check, but now she's authorized to use it. And so the falsity is in the representation. And so there's a real practical commercial reason, as the court set forth in Hunt, for distinguishing between false agency endorsements where the underlying wrong is the breach of trust of an agent's duty to its principle and a false making of a document. And the reason is, under the common law and under the uniform commercial code, it is the banks that are held liable and on the hook for paying on forged instruments because a bank is supposed to be able to determine if it's an actual false document. Thank you, Mr. Morrow. Your time has exceeded. We thank you for your argument. We thank both the counsel for their arguments in the case. We will take the matter under advisement. Thank you.